```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICHARD PINTO,

                        Plaintiff,

          -against-                              MEMORANDUM &
                                                 ORDER
JAMES WALSH, Superintendent,                     09-cv-05419 (ENV)
Sullivan Correctional Facility

                        Respondent.
-----------------------------------------------------------x
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 10 2014 ★
BROOKLYN OFFICE

Petitioner Richard Pinto filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court denies the writ and dismisses the petition.

## Background

On May 31, 2004 shortly after midnight, Esan Seaforth was sitting in the driver's seat of his car in front of 533 Herzl Street in Brooklyn. Pinto, an acquaintance of Seaforth's, approached the car and shot Seaforth twice, killing him.[1] Petitioner was arrested and charged with two counts of second-degree murder (intentional and depraved-indifference), second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon. On March 8, 2006, following a jury trial, petitioner was convicted of intentional second-degree murder and second-degree criminal possession of a weapon. He was sentenced to 25 years to life imprisonment on the murder count and fifteen 15 years on the weapon

---

[1] Because Pinto was convicted, the Court recites the facts in the light most favorable to the verdict. See Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012).

possession count, to be served concurrently, as well as three years post release supervision.

Petitioner appealed his conviction to the Appellate Division, Second Department, raising three claims: (1) the trial court committed a reverse-Batson error in violation of the Fourteenth Amendment when it sat a juror that Pinto's counsel had attempted to strike during *voir dire*; (2) the trial court improperly curtailed cross-examination of a prosecution witness in violation of the confrontation clause of the Sixth Amendment; and (3) petitioner was deprived of due process when the court permitted the prosecutor to question the defendant about his alleged prior bad acts. On November 5, 2008, the Appellate Division unanimously affirmed Pinto's conviction, holding that the trial court's reverse-Batson ruling was proper and that Pinto's confrontation clause claim was without merit. The court further concluded that petitioner's due process claim was unpreserved for appellate review. See People v. Pinto, 56 A.D.3d 494 (2d Dep't 2008). On February 2, 2009, the Court of Appeals denied leave to appeal.

On December 10, 2009 petitioner filed the instant application for a writ of habeas corpus, raising the above reverse-Batson and confrontation clause claims.

## Standard of Review

This petition is subject to the Antiterrorism and Effective Death Penalty of 1996 (AEDPA), which provides that a federal writ of habeas corpus may not be granted to a state prisoner held subject to the judgment of a state court unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (citation omitted). Clearly established federal law "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" See Greene v. Fisher, 132 S. Ct. 38, 44 (2011); Carey v. Musladin, 549 U.S. 70, 74 (2006). To be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" Fisher, at 44; McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003).

A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (internal quotation omitted). This is a highly deferential standard, as § 2254(d) "demands that state-court decisions be given the benefit of the doubt." Bell v. Cone, 543 U.S. 447, 455 (2005). "If this standard is difficult to meet—and it is—that is because it was meant to be." Burt v. Titlow, 2013 WL 5904117, at *4 (2013) (internal citations omitted). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas review is the remedy." Id.

## Analysis

I. Reverse-Batson claims

Pinto asserts that the trial court violated the Sixth and Fourteenth Amendments when it sat a juror that his counsel attempted to peremptorily strike. Specifically, during jury selection, defense counsel attempted to exercise eight

3

peremptory challenges. The prosecutor challenged all eight, noting that they were all Caucasions. From that, the prosecutor argued that the strikes were racially motivated. The trial court upheld 7 of the 8 peremptory strikes but determined that the reasons provided by defense counsel for the final strike were pretextual. The final challenged juror, Linda Cosgrove, was then seated by the trial court.

In <u>Batson v. Kentucky</u>, 476 U.S. 79, 86 (1986), the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's [constitutional] right to equal protection because it denies him the protection that a trial by jury is intended to secure." In this regard, the Second Circuit has noted, "[t]he Supreme Court has repeatedly held that the right to peremptory challenges is not a federal constitutional right." <u>Hayes v. Conway</u>, 2009 WL 320188, at *1 (2d Cir. 2009). Indeed, <u>Batson</u> was not "concerned with establishing any overarching right to peremptory challenges" and, accordingly, "absent allegations that the petitioner was denied his right to an impartial jury, the loss of a peremptory challenge alone does not implicate [petitioner's] Sixth Amendment Rights." <u>Id.</u> at *2. In short, "the state court's denial of . . . peremptory challenges cannot provide a basis for federal habeas relief." <u>Id.</u> (citing 28 U.S.C. 2254); <u>Boston v. Brown</u>, 2014 WL 726683, at *12 (E.D.N.Y. 2014) (rejecting challenges to a reverse-<u>Batson</u> ruling on Sixth Amendment and Equal Protection grounds because "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution.") (citing <u>Rivera v. Illinois</u>, 556 U.S. 148, 158 (2009)). Because Pinto has not alleged—much less provided any evidence—that any of the empanelled jurors were unqualified or biased, his reverse-<u>Batson</u> claim fails as a matter of law.

4

Fogel v. Lee, 2013 WL 6199981, at *8 (E.D.N.Y. 2013) ("Because the right to peremptory challenges in state court is a creature of state rather than federal constitutional law, a state court's determination that such a ruling did not involve an error warranting reversal will not be overturned in federal court so long as all seated jurors are qualified and unbiased.")

## II. Confrontation Clause Claim

Pinto next contends that the trial court violated the Sixth Amendment by limiting the scope of defense counsel's cross-examination of Seaforth's girlfriend, Andrene Roper. Roper was sitting in the car next to Seaforth when Pinto shot him. She was the sole eyewitness to the murder, making her, quite obviously, a critical witness at trial. According to Pinto, the trial court unconstitutionally restricted counsel's cross-examination of Roper in two ways: (1) by precluding him from asking Roper about a prior statement she made to detectives, and (2) by preventing him from attempting to refresh Roper's recollection with a police report reflecting an earlier conversation she had with detectives. Petitioenr also asserts that the trial court allowed the prosecution to bolster its case with hearsay testimony. The state courts considered the first two arguments on their merits and rejected both. The state courts further concluded that Pinto's bolstering claim had been procedurally defaulted and, in any event, lacked merit as well. Those conclusions, naturally, are due AEDPA deference.

A stalwart principle of the American criminal justice system, "the Confrontation Clause of the Sixth Amendment guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Delaware v. Van

5

Arsdall, 475 U.S. 673, 678 (1986). "It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him." Watson v. Greene, 640 F.3d 501 (2d Cir. 2011) (citation omitted). However, the Sixth Amendment does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Pointedly, a trial court's decision to curtail cross-examination will only be reversed if that court has abused its "broad discretion." Watson at 510.

Pinto's first claim centers on Roper's testimony about the relationship of Seaforth to certain unsavory characters other than Pinto. Specifically, during Roper's cross-examination, she testified that she did not recall whether Seaforth owed money to a local drug dealer, Lyteek McLeod. (Trial Tr. at 660.) At that point, defense counsel attempted to impeach her by reading aloud a prior statement—not in evidence—that she gave to detectives regarding Seaforth's relationship with McLeod. The People objected and the trial court sustained, ruling orally that Pinto's counsel could not read aloud the contents of Roper's prior statement because that statement was not in evidence. (Trial Tr. at 660-62.) Critically, and contrary to Pinto's contention now, the record demonstrates that the trial judge did not preclude counsel from questioning Roper about her knowledge of Seaforth's relationship with McLeod, but, rather, sustained the objection based on counsel's form of impeachment. (Id. at 660-65.) Reading the contents of a document not in evidence, as counsel attempted to do was improper under New

York law. See Adkins v. Queens Van-Plan, Inc., 740 N.Y.S.2d 389, 390 (2d Dep't 2002). Following the court's ruling, defense counsel apparently made a strategic decision to abandon this line of questioning entirely. (Trial Tr. at 665-68.) In essence the decision to "curtail" this topic of cross-examination actually came from Pinto's counsel, not the court. Plainly, not only has Pinto failed to establish that the trial court improperly curtailed the cross-examination of Roper in any way, he also failed to demonstrate that the trial court's ruling was contrary to any clearly established principle of federal law.

On a second front, petitioner asserts that the trial court committed constitutional error when it precluded defense counsel from using a police report to refresh Roper's recollection at trial. During his cross-examination, counsel asked Roper a series of questions about prior conversations she had with Detective Parsekian, one of the detectives that investigated Seaforth's murder. (Tr. at 725-35.) Counsel and Roper had the following exchange:

> Q: And, basically, you told Detective Parsekian that you were approached by a male in the neighborhood, that this male he told you that it was Richard Pinto who shot House, your boyfriend, and told you that he is driving a red Toyota Highlander and gave you a partial New York plate number BKF, correct?
> A: I can't remember that BKF.
> Q: Is there anything that would refresh your recollection.
> A: No.
> Q: How about the police paperwork
> THE COURT: Sustained. That's not proper, counsel. You know that.

(Tr. at 730.) Following this ruling, counsel continued to question Roper about her conversations with Detective Parsekian, among other topics.

A trial court has "has broad discretion to organize or limit the use of evidence

to refresh recollection." Isaac v. City of New York, 271 Fed.Appx. 60, 64 (2d Cir. 2008) (quoting 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 747 F.2d 81, 93 n. 17 (2d Cir.1984)). Here, Roper testified that nothing would refresh her recollection about the answer to defense counsel's question—which, it should be noted, was highly compound. On the basis of Roper's testimony, the trial court may also have concluded that showing her the police report would have been a fruitless exercise. Such a determination would be appropriately within the discretion of the trial court and, more to the point, demonstrably would not be a violation of any clearly established federal law. Moreover, questioning a witness in deposition-style as to whether a document might refresh recollection is a far cry from marking a document for identification, presenting it to the witness for silent review and then asking the witness if it did refresh her recollection. The record does not show, assuming this was an important line of inquiry, that counsel sought to do so, much less that the trial court prevented him from doing so. Whatever the basis for the ruling, there was no constitutional error.

Finally, petitioner asserts that the prosecution bolstered its case through the use of hearsay testimony. Yet, it is well-settled that this sort of claim does not present a basis for federal habeas relief. Marin v. Cunningham, 2007 WL 2479855, at *5 (E.D.N.Y. 2007) ("The bolstering claim is purely an issue of state law that does not warrant habeas relief in federal court"); Minigan v. Donnelly, 2007 WL 542137 at *12 (W.D.N.Y. 2007) ("[A]lleged 'bolstering' of a prosecution witness' testimony does not state a constitutional claim redressable on federal habeas.") Further, state courts concluded that Pinto procedurally defaulted this claim and, therefore, it is

not properly before the Court, in any event, for substantive review.

## Conclusion

For all the foregoing reasons, Pinto's petition for a writ of habeas corpus is dismissed and the issuance of the writ is denied.

Since Pinto has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment for respondent and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
June 6, 2014

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge